**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NOTHERN DIVISION
AT COVINGTON**

**CRIMINAL ACTION NO. 25-37-DLB-CJS**

**UNITED STATES OF AMERICA**                                                       **PLAINTIFF**

**v.**                                       **MEMORANDUM ORDER
ADOPTING REPORT AND RECOMMENDATION**

**JAROD L. NICELY**                                                       **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

**I.   INTRODUCTION**

This matter is before the Court upon the October 6, 2025, Report and Recommendation ("R&R") of Magistrate Judge Candace J. Smith (Doc. # 31) wherein she recommends that the Court deny Defendant Jarod L. Nicely's Motion to Suppress (Doc. # 24). Defendant having filed Objections (Doc. # 34) and the United States having filed its Response (Doc. # 35), the R&R is ripe for the Court's review. For the following reasons, Defendant's Objections are **overruled**, the R&R is **adopted** as the Opinion of the Court, and the Motion to Suppress is **denied.**

**II.   FACTUAL BACKGROUND**

On February 24, 2025, Deputy Brandon Smeltzer of the Boone County Sheriff's Department was driving on I-75 North just south of Exit 175. (Doc. # 31 at 2). While driving, Deputy Smeltzer spotted a tan Chevy Trailblazer in his rearview mirror slow down to avoid passing him. (*Id.*). Deputy Smeltzer then reduced his speed to 40 miles per hour, and the vehicle again slowed. (*Id.*). Eventually, the vehicle passed Deputy

1

Smeltzer, at which point, Deputy Smeltzer observed that the vehicle did not have a working tag light. (*Id*.). Deputy Smeltzer then moved over two lanes to his left to position himself behind the vehicle. (*Id*.). Once behind the vehicle, the driver quickly moved over two lanes to the right and exited at the rest area. (*Id*.). Deputy Smeltzer then initiated a traffic stop. (*Id*.).

Deputy Smeltzer approached the vehicle, explaining that he initiated the traffic stop because the vehicle did not have an active working tag light. (*Id*.). When asked for his driver's license, the driver of the vehicle, Defendant, produced his ID and explained that he stopped at the rest area to use the bathroom. (*Id*.). Deputy Smeltzer questioned Defendant about his intended destination, which Defendant relayed that he was driving to Cincinnati from Menifee County to visit friends. (*Id*. at 2-3). When asked, Defendant additionally produced proof of insurance and vehicle registration. (*Id*. at 3). After inspecting the paperwork, Deputy Smeltzer asked Defendant to step out of the vehicle. (*Id*.). At the hearing on this Motion, Deputy Smeltzer testified that he instructed Defendant to step out of the vehicle due to Defendant's abnormal driving behavior and custom. (*Id*.). Defendant complied with Deputy Smeltzer's request, stepping out of his car and walking to the rear of his vehicle. (*Id*.). When prompted, Defendant admitted that he had a pocketknife on his person. (*Id*.). Deputy Smeltzer then asked if he could search Defendant, to which Defendant consented. (*Id*.). After a thorough search, Deputy Smeltzer found a large sum of money, a phone, and the pocketknife. (*Id*.). When asked about the money, Defendant told Deputy Smeltzer that he had been saving it. (*Id*.). When again asked about his trip, Defendant reiterated that he stopped at the rest area to use the restroom. (*Id*.). Defendant also elaborated on his plans, stating that he was heading

2

to Cincinnati, but was unfamiliar with the area and therefore was using GPS. (*Id.*). When Deputy Smeltzer asked if he could search Defendant's car, Defendant denied consent. (*Id.*).

At that point, Deputy Smeltzer peered into the car from the outside before calling for a canine unit. (*Id.*). While having a discussion about who the Defendant was visiting in Cincinnati, Deputy Smeltzer continued to inspect Defendant's car, mentioning that the vehicle appeared to be loaded down. (*Id.* at 4). Deputy Smeltzer then returned to his cruiser where he filled out the uniform citation and discovered that Defendant had a criminal history involving drug trafficking. (*Id.*). During this time Deputy Smeltzer also called for backup. (*Id.*).

Officer Zink soon arrived on scene as backup while Deputy Smeltzer was still in his car. (*Id.*). Upon arrival, Officer Zink immediately took his canine, Atos, to Defendant's vehicle to begin a free air sniff. (*Id.*). Atos circled the vehicle twice, and, on the second time around, after being commanded by Officer Zink to "fin giftes," Atos stuck his head through the window and remained there until his leash was pulled. (*Id.* at 5). Officer Zink testified that Atos's change in behavior—sticking his head through the window—was Atos's cue that narcotics might be present. (*Id.* n. 7). Officer Zink then informed Deputy Smeltzer that Atos had alerted for narcotics. (*Id.* at 5). Following the alert by Atos, Deputy Smeltzer advised Defendant that he was going to search the vehicle. (*Id.*). Defendant expressed his disagreement with this; however, Deputy Smeltzer and a backup deputy began to search the vehicle. (*Id.*).

The search of the vehicle revealed a suspicious bag in the car, which led to Defendant being handcuffed and read his *Miranda* rights. (*Id.*). When asked how much

3

money Defendant had on him, Defendant informed Deputy Smeltzer that he had $12,000. (*Id*.). When asked about what was in the bag uncovered in the search, Defendant responded that he did not know. (*Id*.). Deputy Smeltzer then stated that it was methamphetamine or cocaine, to which Defendant responded, "it wouldn't be cocaine." (*Id*.). The search of the vehicle also revealed a stolen gun. (*Id*.).

On May 8, 2025, Defendant was charged with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. # 1). On June 12, 2025, Defendant's charges were upgraded to intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. 841(a)(1), possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. # 15).

On July 16, 2025, Defendant filed the present Motion to Suppress, seeking to suppress all evidence obtained from the search of his car. (Doc. # 24). On August 28, 2025, Judge Smith held an evidentiary hearing. (Doc. # 29). On October 6, 2025, Judge Smith issued her R&R recommending that Defendant's Motion to Suppress be denied. (Doc. # 31). Since then, Defendant filed his Objections (Doc. # 34), the United States filed its Response (Doc. # 35), and the R&R is now ripe for this Court's review.

### III.     REPORT AND RECOMMENDATION

Defendant argued that the evidence obtained from the traffic stop should be suppressed for two reasons. First, Defendant argued that the traffic stop was

unreasonably prolonged without reasonable suspicion when Deputy Smeltzer ordered Defendant out of the car and subsequently conducted a drug investigation. (Doc. # 24 at 9). Second, Defendant argued that the statements he made during the traffic stop must be suppressed because he was not given his *Miranda* warnings. (*Id*. at 18).

After summarizing the relevant factual background, Judge Smith addressed Defendant's arguments as follows. First, Judge Smith addressed whether Deputy Smeltzer unreasonably prolonged the traffic stop when he detained Defendant and conducted a drug investigation of the vehicle. (Doc. # 31 at 7). Judge Smith noted that under Supreme Court precedent, "[t]he duration of an officer's inquiry is determined by the seizure's 'mission,' meaning 'to address the traffic violation that warranted the stop' and 'attend to related safety concerns[.]'" (*Id*. (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015))). Judge Smith further noted that a seizure may be extended if "something happened during the stop to cause the officer to have reasonable articulable suspicion that criminal activity is afoot." (*Id*. at 10-11 (quoting *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012))).

Judge Smith first analyzed whether Deputy Smeltzer unreasonably prolonged the stop by asking Defendant to exit the vehicle. There, Judge Smith applied the Sixth Circuit's discussion in *United States v. Whitley*, which held that asking a driver to exit the vehicle, even when considered a safety measure, "is still a detour that requires individual reasonable suspicion." (*Id*. at 10 (quoting *Whitley*, 34 F.4th 522, 527 (6th Cir. 2022))). Applying the *Whitley* test, Judge Smith concluded that "Deputy Smeltzer did not ask Defendant to exit his car for impermissible reasons." (*Id*.). Specifically, Judge Smith reasoned that "Deputy Smeltzer took no overt actions in furtherance of an unrelated

5

investigation" and "[c]onsequently, when Deputy Smeltzer asked Defendant to exit his car, it did not require independent reasonable suspicion." (*Id*. at 12).

Next, Judge Smith addressed Defendant's argument that Deputy Smeltzer unreasonably extended the traffic stop to conduct a drug investigation. (*Id*.). Judge Smith reasoned that Deputy Smeltzer did, at some point, "pivot" and began "taking actions more in line with a narcotics investigation and not the traffic stop." (*Id*.). As a result of this conclusion, the question turned to whether Deputy Smeltzer had reasonable suspicion to do so. As Judge Smith noted, "'[r]easonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop.'" (*Id*. at 13 (quoting *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001))).

In analyzing whether Deputy Smeltzer had reasonable suspicion, Judge Smith listed three facts which Deputy Smeltzer relied upon to conduct the investigation: (1) Defendant's unusual driving behavior; (2) Defendant's apparent nervousness during the beginning of the traffic stop; and (3) the large amount of cash Defendant had on his person. (*Id*.). In her R&R, Judge Smith analyzed each fact independently and in totality. Accordingly, Judge Smith found that "the totality of the events that transpired gave Deputy Smeltzer reasonable suspicion to extend the scope of the traffic stop" and Defendant therefore "failed to demonstrate a violation of his rights under the Fourth Amendment." (*Id*. at 17).

Finally, Judge Smith addressed whether Defendant's *Miranda* rights were violated. (*Id*.). Judge Smith noted that under Supreme Court precedent, the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial

6

interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (*Id*. (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966))). Judge Smith further acknowledged that "[f]or the purposes of *Miranda*, 'an ordinary traffic stop' is not custodial because most 'roadside detentions last only a few minutes' and generally a driver does not 'feel[] completely at the mercy of the police.'" (*Id*. (quoting *Berkemer v. McCarty*, 468 U.S. 420, 437-38 (1984))). Judge Smith reasoned that "Defendant was not in custody until he was *Mirandized*" because up until that point "he was unrestrained and had access to his phone." (*Id*. at 18). As such, Judge Smith concluded that "Defendant failed to demonstrate a violation of his *Miranda* rights." (*Id*.). For these reasons, Judge Smith recommended that Defendant's Motion to Suppress should be denied. (*Id*.).

## IV. ANALYSIS

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion." Under Federal Rule of Criminal Procedure 59(b)(1)(2), following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations." The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). Failure to object is considered waiver of the party's right to review. Fed. R. Crim. P. 59(b)(2).

7

The purpose of objections is to allow "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (footnote omitted). Therefore, objections to the R&R must be specific—they may not be "vague, general, or conclusory . . . [as such objections are] tantamount to a complete failure to object." *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x. 481, 482-83 (6th Cir. 2001). "Moreover, 'an "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context.'" *United States v. Vanover*, No. 2:10-cr-14, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)).

**B.     Defendant's Objections**

Defendant filed his Objections to the R&R (Doc. # 34), raising two main arguments: (1) Deputy Smeltzer asked Defendant to exit the car for impermissible reasons and did not have an independent reasonable suspicion to do so; and (2) Deputy Smeltzer did not have reasonable suspicion to extend the traffic stop for a dog sniff.[1]  (Doc. # 34 at 1-6).

*1. Exiting the car*

Defendant first objects to Judge Smith's conclusion that Deputy Smeltzer asked Defendant to exit the car for permissible reasons and therefore did not need independent reasonable suspicion. (*Id*. at 1). Specifically, Defendant points to Deputy Smeltzer's testimony where he stated that after Defendant got out of the car, he searched Defendant's person to identify if he was carrying any weapons or illegal contraband. (*Id*.

---

[1]    Defendant does not object to the conclusion that his *Miranda* rights were not violated.

8

at 3 (quoting Doc. # 33 at 44)).  Defendant argues that this admission "shows th[at] Deputy Smeltzer's purpose for having [Defendant] exit the vehicle was not officer safety, but to ask him about illegal contraband on his person and then illegal contraband in the vehicle." (*Id*.).  However, this admission is not exactly the "gotcha moment" Defendant portrays it to be.  When reviewing the record, Deputy Smeltzer does admit to asking if he can search Defendant for weapons or illegal contraband.  (*See* Doc. # 33 at 44).  Even so, as addressed by Judge Smith, asking Defendant if he was armed or had contraband on his person is "an appropriate inquiry for safety reasons," especially given that Defendant had just informed Deputy Smeltzer that he had a pocketknife on him.  (Doc. # 31 at 12). Moreover, Deputy Smeltzer asking to search Defendant's person *after* he was outside his vehicle does not conclusively prove that Deputy Smeltzer had impermissible reasons to originally ask him to step out.

Next, Defendant cites to *United States v. Lang*, 652 F. Supp. 3d. 820 (E.D. Ky. 2023), which he claims supports a finding that Deputy Smeltzer extended the stop when he asked Defendant to step out of the car.  (Doc. # 34 at 4).  However, that case was already distinguished by Judge Smith in her R&R.[2]  (*See* Doc. # 31 at 12) ("The instant case is distinct from *Lang* . . . . The officer in *Lang* testified that he only removed occupants because he was suspicious of criminal activity. . . . That is not true of the present case."). As analyzed by Judge Smith, the officer in *Lang* asked Defendant to step out of the vehicle to investigate a digital scale he noticed.  (*Id*. at 11 (citing *Lang*, 652 F. Supp. 3d at 824)).

---

[2]    While the Court will proceed to address the merits of this argument, it also finds that this argument is nothing but a mere disagreement with Judge Smith's conclusion.  As stated above, an objection that "state[s] a disagreement with a Magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."  *United States v. Shephard*, No. 09-81-DLB-EBA, 2016 WL 9115464, at *1 (E.D. Ky. Sept. 18, 2016) (citing *VanDiver*, 304 F. Supp. 2d at 983).

9

Conversely, Deputy Smeltzer asked Defendant to exit the vehicle because (1) Defendant was driving abnormally; (2) he instructs drivers out of their cars as a matter of course; and (3) it was late at night. (*See id.*; *see also* Doc. # 33 at 21).

Finally, Defendant urges this Court to look to *United States v. Moffitt*, an unpublished Sixth Circuit decision where the court held that an officer's search of the defendant's car extended beyond the scope and duration of the stop. No. 24-5536, 2025 WL 2702495, at *7 (6th Cir. 2025). However, the facts of *Moffitt* are distinguishable from the facts herein. There, the officer had already run a check for outstanding warrants, been provided with the defendant's license and registration, and received answers to his various questions about the defendant's activities that night before he began inquiring about any illegal items in the car. *Id*. at *6. It was only then, after the traffic stop had concluded, that the officer asked the defendant to step out of the car so that he could conduct a search of the defendant's vehicle. *Id*. In contrast, Deputy Smeltzer asked Defendant to exit the car almost immediately upon initiating the traffic stop. (Doc. # 31 at 11). Unlike the officer in *Moffitt*, Deputy Smeltzer did not conclude the traffic stop and *then* search Defendant. Rather, the traffic stop was still underway when he asked Defendant to step out of the vehicle. And, as stated by Judge Smith, Deputy Smeltzer's proffered reasons to have Defendant step out of the vehicle are permissible under Supreme Court precedent. (See Doc. # 31 at 12) ("During a lawful traffic stop, an officer can ask a driver to exit *for any reason other than* an unrelated criminal investigation . . . including that it is the officer's habit to do so with a traffic stop[.]"). Accordingly, Defendant's first objection is **overruled**.

10

*2. Reasonable suspicion to extend the traffic stop*

Defendant next takes issue with Judge Smith's conclusion that Deputy Smeltzer had reasonable suspicion to extend the traffic stop and conduct a drug investigation. (Doc. # 34 at 6).  Specifically, Defendant argues that because the cash was discovered after Deputy Smeltzer asked Defendant to exit the vehicle, it "should not be the basis for forming independent reasonable suspicion to deviate from the traffic violation investigation."  (*Id*.).  Accordingly, Defendant contends that the "record doesn't support the finding that the Defendant's driving behavior or apparent nervousness should support a finding of reasonable suspicion."  (*Id*.).[3]

First, given that the Court found that Deputy Smeltzer did not begin an unrelated criminal investigation immediately upon asking Defendant to step out of the car, Defendant's argument that the cash should not be taken into consideration in the reasonable suspicion analysis is immaterial.  The Court agrees with Judge Smith's conclusion that it was not until Deputy Smeltzer began inquiring about the cash and peering into Defendant's car that he abandoned the traffic stop and began taking actions more in line with a narcotics investigation.[4]  (*See* Doc. # 31 at 12).  Accordingly, Deputy Smeltzer must have had reasonable suspicion to abandon the traffic stop.

As noted by Judge Smith, "[r]easonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant

---

[3]   As a preliminary matter, Defendant's objection, in the Court's view, amounts to nothing more than a disagreement with Judge Smith, at best.  Nevertheless, the Court will address the objection on the merits.

[4]   The United States "disagrees that the traffic stop was abandoned." (Doc. # 35 at 6).  The Court disagrees, finding that once Deputy Smeltzer began asking about the cash and peering into Defendant's car, he was no longer taking steps in line to investigate the traffic stop.  To the extent that this is an objection by the United States, it is overruled.

the continued detention of a motorist after a traffic stop." (*Id*. at 13 (quoting *Smith*, 263 F.3d at 588)). The officer "must point to 'specific and articulable facts' that are 'more than an ill-defined hunch.'" (*Id*. (quoting *Stepp*, 680 F.3d at 644)). In this case, the specific facts identified by Deputy Smeltzer were: (1) Defendant's unusual driving behavior; (2) Defendant's apparent nervousness; and (3) the large amount of cash Defendant had on his person. (*Id*.).

With respect to Defendant's nervousness, Judge Smith acknowledged that "Defendant's nervousness, if any, plays only a small role in the reasonable suspicion determination." (*Id*. at 15). The Court agrees. As to Defendant's unusual driving behavior, Judge Smith concluded that the "change in speed and quick driving movements to exit and distance himself from police are driving actions that [are] not unreasonable for Deputy Smeltzer to notice as he was also observing the deficient tag light. (*Id*.). Defendant disagrees, arguing that because he had been driving for over two hours, "it is common for people to pull over and use [a] rest stop area when traveling long distances." (Doc. # 34 at 7). Additionally, Defendant argues that given the traffic, "[a] prudent driver would [] slow down to merge into the flow of traffic of whatever the target lane is in order to safely merge and take the exit." (*Id*.). Defendant thus contends that his "driving [was] reasonable given his desire to exit the interstate to an available rest stop exit to use the restroom, and the traffic conditions cause[d] by Deputy Smeltzer's 'slow roll' law enforcement tactic." (*Id*.). Not only is Defendant's argument a mere disagreement with Judge Smith's conclusion, but case law in this district supports the conclusion that a change in speed is an appropriate factor to consider in a reasonable suspicion analysis. *See United States v. Lott*, No. 6:17-cr-52-GVTH-HAI, 2018 WL 2348684, at *7 (E.D. Ky.

12

Feb 7, 2018) (finding, among other things, that the defendant changing speed when seeing a marked police car was an appropriate factor to consider in the reasonable suspicion analysis).

Finally, as to the large amount of cash, both Judge Smith and the undersigned have disregarded Defendant's argument that the search was already underway prior to finding the cash. Therefore, Deputy Smeltzer was permitted to rely on the money's existence to establish reasonable suspicion. And as such, such a "large amount of cash, especially when considered with other indicia of criminal activity such as his driving behaviors, weighs heavily in the reasonable suspicion analysis." (Doc. # 31 at 16). Therefore, Judge Smith correctly concluded that the totality of the events gave Deputy Smeltzer reasonable suspicion to extend the scope of the traffic stop.

Therefore, Defendants' Objections are **overruled**.

### V. CONCLUSION

For the reasons stated herein, Defendant has failed to raise any meritorious legal objections to Judge Smith's Report and Recommendation. Accordingly,

**IT IS ORDERED** as follows:

(1) The Magistrate Judge's R&R (Doc. # 31) is **ADOPTED as the Opinion of the Court**;

(2) Defendant's Objections (Doc. # 34) to the R&R are **OVERRULED**;

(3) Defendant's Motion to Suppress (Doc. # 24) is **DENIED**; and

(4) This matter is scheduled for a **Scheduling Conference** on **Tuesday, November 25, 2025 at 11:30 a.m.** in **Covington** before the undersigned Judge.

This 17th day of November, 2025.



Signed By:
*David L. Bunning*
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Covington Criminal\2025\25-37 Order Adopting R&R.docx